UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 5:10-CR-149-JMH-HAI-1 |
| | ) | No. 5:12-CV-7251-JMH-HAI |
| v. | ) | |
| | ) | RECOMMENDED |
| DANTE DEMETRIUS STEWART, | ) | DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*** *** *** ***

On December 18, 2012, Defendant Dante Demetrius Stewart, pro se, filed a motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. D.E. 70. Following full briefing and an evidentiary hearing, the motion is ripe for review. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), the motion was referred to the undersigned for a recommended disposition. For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his motion be **DENIED**, and that no certificate of appealability be issued.

## I. BACKGROUND

On November 4, 2010, a federal grand jury returned an indictment as to Dante Demetrius Stewart and co-defendant, Darryl William Stewart, Jr. D.E. 1. The indictment charged Defendant with one count of knowingly and intentionally possessing with intent to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). *Id*. On

Count 1, Defendant faced a statutory mandatory minimum of five years of incarceration, a maximum term of incarceration of 40 years, not more than a $2,000,000 fine, and a term of supervised release of not less than four years. *Id*. at 5; *see* 18 U.S.C. 841(b)(1)(B). On Count 2, Defendant faced a mandatory minimum term of five years of incarceration consecutive to any sentence imposed on Count 1, not more than a $250,000 fine, and not more than five years supervised release. D.E. 1 at 5; *see* 18 U.S.C. 924(c)(1)(A)(i). Defendant retained Jerry Wright as counsel. D.E. 11.

### A. Motion to Suppress

On January 20, 2011, Defendant and his co-defendant filed a joint Motion and Memorandum in Support to Suppress Evidence Seized as a Result of Unlawful Detention and Frisk of Defendants. D.E. 17. The United States filed a Response to the motion to suppress (D.E. 20), to which Defendant filed a reply (D.E. 21). Following a suppression hearing held on January 26, 2011, District Judge Hood denied the defendants' joint motion to suppress. D.E. 22. A Memorandum Opinion and Order was entered the next day setting out the basis for the decision. D.E. 26. Defendant and his co-defendant thereafter filed a Joint Motion for Rearraignment. D.E. 24.

### B. Plea Agreement

On January 31, 2011, Defendant entered into a conditional plea agreement to plead guilty to one count of possession with intent to distribute five or more grams of crack cocaine, and one count of knowingly carrying a firearm in furtherance of the commission of a drug trafficking crime. D.E. 27. He pled guilty on the same date. D.E. 29. In his plea agreement, Defendant waived the right to appeal or attack collaterally the guilty plea, conviction, and sentence. D.E. 27 at ¶10. Defendant reserved the right to appeal the issue of whether the search giving rise to

2

the underlying charges was conducted in violation of the Fourth Amendment. *Id*. The District Judge ultimately sentenced Defendant to 60 months of imprisonment on each count, to be served consecutively, with recommendations of drug treatment and any available vocational training. D.E. 45 at 2. Additionally, Defendant received four years of supervised release on each count, to be served concurrently. *Id*. at 3.

### C. Direct Appeal and Post-conviction Proceedings

Defendant timely filed a notice of appeal. D.E. 48. However, after consulting with his attorney (D.E. 102 at 9-10; 59-60.), Defendant filed a motion for a remand for resentencing in light of the Fair Sentencing Act of 2010 ("FSA"), which the Sixth Circuit granted. D.E. 66. The next day, the District Judge issued a written order reducing Defendant's sentence on Count 1 to 24 months. D.E. 67. Defendant filed no further appeal to the Sixth Circuit.

In his section 2255 motion, Defendant asserts three grounds for relief: 1) Defendant was denied the right to be free of illegal search and seizure in violation of the Fourth and Fourteenth Amendments; 2) Defendant was denied his procedural and/or substantive due process rights in violation of the Fifth and Fourteenth Amendments because his conviction on Count 1 of the indictment can no longer be defined as a "drug trafficking Crime" for purposes of 18 U.S.C. § 924(c) in light of the FSA; and 3) Defendant was denied the effective assistance of appellate counsel for his first appeal of right in violation of the Sixth Amendment. D.E. 70 at 4-7. Defendant's Motion requests that the Court vacate his conviction or, in the alternative, restore his right to direct appeal. *Id*. at 8.

In the memorandum of law filed along with Defendant's section 2255 motion, he argues that his rights to be free of illegal search and seizure were violated when a pat-down was performed on his person without reasonable suspicion to believe he was armed and dangerous,

and that he received ineffective assistance of counsel when his appellate counsel ignored his requests to challenge District Judge Hood's decision denying his motion to suppress. D.E. 70-1 at 6. Further, Defendant argues that his appellate counsel should have briefed the 924(c) predicate offense issue he now raises as his second ground for section 2255 relief on appeal. *Id.* at 19-20. The United States filed a response in opposition to Defendant's motion on March 21, 2013. D.E. 78. Defendant filed his reply to the government's response on May 24, 2013. D.E. 87. In his reply, in addition to the relief previously sought in his motion, Defendant asked for an evidentiary hearing to determine the merits of his ineffective assistance of counsel claim and for appointment of counsel pursuant to the Criminal Justice Act. D.E. 87 at 18-19.

### 1. Evidentiary Hearing

On January 22, 2014, the Court ordered that a limited evidentiary hearing be held on the issue of whether Defendant instructed Mr. Kevin Schad, his appellate counsel, to appeal the suppression issue preserved by his conditional plea. D.E. 90. Attorney Eric Edwards was appointed pursuant to the Criminal Justice Act to represent Defendant at the hearing. D.E. 91. Both Defendant and Mr. Schad testified at the hearing. D.E. 101. The testimony presented the unique issue of whether Defendant, following remand from the Sixth Circuit, was unrepresented in violation of his Sixth Amendment Right to Counsel. D.E. 100; D.E. 102 at 84-100. Defendant filed a supplemental memorandum on March 28, 2014, arguing that his Sixth Amendment Right to Counsel was violated, and that this violation resulted in the denial of his opportunity to file an appeal to address the suppression issue. D.E. 103 at 4. The United States filed a response on April 14, 2014, arguing that the issue as to whether Defendant should have been granted a resentencing hearing before being resentenced is not relevant, and that the evidence indicates that Defendant did not direct Mr. Schad to file an appeal. D.E. 106.

## II. ANALYSIS

### A. Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a section 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). By contrast, to obtain habeas relief based on an alleged non-constitutional error, a defendant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). As the section 2255 movant, a defendant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Additionally, the Court recognizes that Defendant is proceeding pro se, or without the assistance of an attorney. Pro se motions receive a comparatively lenient construction by the Court. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

### B. Merits of Defendant's Fourth Amendment Claim

As discussed in Part II.D below, Defendant bases his claim of ineffective assistance of counsel on alleged Fourth Amendment violations that he argues his attorney should have pursued

through an appeal of the District Judge's denial of his motion to suppress. D.E. 70 at 7. The Sixth Circuit has held that while "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986)). Though the premise from *Kimmelman* stems from an ineffective assistance of trial counsel claim, where a Fourth Amendment claim is shown to have no merit, an ineffective assistance of appellate counsel claim must fail as well. *See Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011).

The search at issue began with a traffic stop on April 28, 2010, conducted by Police Officer Ricky Lynn. D.E. 26 at 1. At the time of the stop, Officer Lynn had been working as a Neighborhood Resource Officer in the area in which the stop occurred for approximately seven years. *Id*. at 1-2. He was aware of the high volume of criminal activity in the area, and had personally responded to numerous calls involving firearms in the two months prior to the traffic stop. *Id*. at 2. Officer Lynn initially noticed the vehicle in question when he observed that two of the three occupants were not wearing seatbelts, which is a violation of Kentucky law. *Id*. at 2-3. While following the vehicle, he witnessed it make a turn without a signal—another violation of Kentucky law—and subsequently pulled the vehicle over. *Id*. at 3.

Upon approaching the vehicle, Officer Lynn noticed a crack in the windshield obstructing the driver's vision and an open liquor bottle near the passenger in the back seat, the third and fourth violations of Kentucky law he noticed. *Id*. Upon identifying each of the three occupants in the vehicle, Officer Lynn discovered, in relevant part, that Defendant had a wanton endangerment arrest involving four counts in November of 2009. *Id*. Based on his experience,

he believed a firearm was involved in the 2009 incident. *Id*. Furthermore, Defendant had been arrested for possession of a controlled substance in August of 2009. *Id*. at 3-4. Additionally, the check revealed that the driver of the vehicle had six arrests for carrying a concealed deadly weapon, and the rear passenger had a drug trafficking conviction. *Id*. at 4.

Based upon the discovery that the occupants of the vehicle had criminal histories involving drugs and weapons, Officer Lynn called for a backup unit due to safety concerns and a canine unit based on a suspicion of drug activity. *Id*. Prior to the canine "sniff," Officer Lynn conducted a *Terry* frisk of the three occupants of the vehicle. *Id.* at 4-5. Officer Lynn patted Defendant down, "felt a hard object that he knew to be a firearm in [Defendant]'s rear pants pocket," and removed a loaded firearm from Defendant's person. *Id*. at 5. Defendant was then arrested. *Id*.

Within a minute of Officer Lynn finding the weapon on Defendant, the canine alerted to the presence of narcotics in the car. *Id*. The officers then searched the car, found another firearm under the driver's seat, and the driver admitted after being read his *Miranda* rights that the firearm was his. *Id*. During a search subsequent to arrest, the driver was found to be in possession of 1.4 grams of powder cocaine, as well as $777.00 in cash. *Id*. The vehicle was described as having a strong odor of marijuana, but no other controlled substance was found during the search. *Id*.

While Defendant was in the booking area of the jail, and after the officers left Defendant and the driver of the vehicle unobserved momentarily, a baggy of suspected crack cocaine was found on the floor. *Id*. at 6. Defendant subsequently admitted to dropping the baggy, and informed Officer Lynn of more cocaine in his underwear which he then produced. *Id*.

Given this evidence, the District Judge concluded that the traffic stop was legal (*Id*. at 7), Officer Lynn acted lawfully when asking the three occupants to exit the vehicle prior to the canine "sniff" (*Id*. at 7-8), and the *Terry* frisk was constitutional (*Id*. at 8-12). The District Judge concluded alternatively that even if the *Terry* frisk was unconstitutionally flawed, the inevitable discovery doctrine would allow for the admission at trial of the firearm discovered in Defendant's rear pocket during the traffic stop. *Id*. at 12-14; *see United States v. Garcia*, 496 F.3d 495, 505-506 (6th Cir. 2007) ("The inevitable discovery doctrine is an exception to the exclusionary rule which 'allows unlawfully obtained evidence to be admitted at trial if the government can [show] . . . that the evidence inevitably would have been acquired through lawful means.'") (internal citations omitted). Judge Hood found that because the canine alerted to the presence of drugs in the vehicle, and the officers found a loaded firearm under the driver's seat, a *Terry* frisk of the occupants of the vehicle would have eventually occurred and the evidence discovered during the initial *Terry* frisk was therefore admissible. *Id*. at 14.

First, Defendant argues that the evidence should be suppressed because "Officer Lynn did not have a reasonable suspicion to believe that he was armed and dangerous." D.E. 70-1 at 4. Specifically, Defendant takes issue with the determination of the District Judge that the totality of the circumstances justified Officer Lynn's belief that Defendant was armed and dangerous. *Id*. at 8-10. Defendant argues that the District Judge relied too heavily on the "'bare bone' conclusions of Officer Lynn" as opposed to articulable facts and circumstances surrounding the stop. *Id*. at 9. Further, Defendant cites case law for the proposition that factors such as past criminal history or an individual's presence in a high crime area, taken alone, do not support a reasonable suspicion that an individual is committing a crime. *Id*. at 10. Defendant challenges the scope and duration of the stop rather than its legitimacy. *Id*. at 11. Specifically, Defendant

asserts that Officer Lynn should have waited for "reasonable suspicion from the canine sniff that Stewart may also be armed and dangerous" before performing a pat down search. D.E. 70-1 at 12.

It is clear that the District Judge applied the law correctly in denying Defendant's Motion to Suppress. Defendant argues, based on *United States v. Vazquez*, 449 Fed. Appx. 96 (3rd Cir. 2011), that "'reasonable' suspicion' must be based on articulabe [sic] facts and not the inachoate [sic] and [un]particularized 'hunch' of the police." D.E. 70-1 at 9. As the District Judge properly determined, Officer Lynn did not base his suspicion on a "hunch," but rather on a variety of factors including Defendant's criminal history and Defendant's presence in an area known for drug trafficking and firearms.

Defendant cites *Joshua v. Dewitt*, 341 F.3d 430, 446 (6th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)), for the proposition that a Defendant's criminal history, though relevant, does not alone create a reasonable suspicion that criminal activity is currently afoot. D.E. 70-1 at 10. The facts in *Joshua* are distinguishable from this case for two reasons. First, in the present case, Officer Lynn was aware of Defendant's criminal history—including prior arrests for drug possession, drug trafficking, and possession of firearms—at the time he made the decision to search Defendant. In *Joshua*, the officer learned of the petitioner's past criminal history long after verifying that the petitioner was in lawful possession of a rental car and after detaining him for quite some time. Second, unlike in *Joshua*, Defendant was stopped in a high-crime area. These are relevant factors concerning the totality of the circumstances surrounding the short detention of Defendant between the time the stop was made and the canine unit arrived.

Next, Defendant cites *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008), for the proposition that an individual's presence in a high crime area, standing alone, is not enough

to support a reasonable suspicion that crime is afoot. D.E. 70-1 at 10. However, *Campbell* also instructs that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Campbell*, 549 F.3d at 371 (quoting *United States v. Pearce*, 531 F.3d 374, 383 (6th Cir. 2008)). Again, this fact is relevant to the totality of the circumstances.

Defendant asserts that, taken together, the facts of his case "do not give rise to a particularized and objective basis on which the Court may rely." D.E. 70-1 at 10. However, the District Judge conducted a lengthy and thorough analysis of the circumstances giving rise to the challenged pat down search. D.E. 26 at 8-12. Judge Hood viewed "all of the facts and circumstances as a whole . . . while avoiding the error of doing so 'in artificial isolation[]'" to determine "whether a 'reasonably prudent man in the circumstances' could have believed his safety and that of others was in danger.'" *Id*. at 12 (citations omitted). As such, Defendant's argument that the factors of criminal history or presence in a high crime area were not sufficient to support reasonable suspicion when viewed in isolation are not persuasive and are without merit. Because the District Judge did not err when determining that "the *Terry* frisk of [Defendant] was supported by a reasonable suspicion that he and the other occupants were armed and dangerous[,]" (*Id*.) this claim must fail.

Finally, Defendant argues that the District Judge incorrectly determined—as an alternative justification for denying his motion to suppress—that the firearm would have been inevitably discovered through lawful means. D.E. 70-1 at 13-15. Defendant's argument boils down to an assertion that the positive alert of the drug-detection dog did not establish probable cause. Defendant does not challenge that a positive canine alert can establish probable cause, but argues rather that the District Judge "never made a factual finding as to the drug detection dog's

10

reliability as required by *U.S. v. Diaz*." *Id*. at 14 (referencing *United States v. Diaz*, 25 F.3d 392 (6th Cir. 1994)). Defendant is correct in his assertion that the District Judge never made a finding as to the canine's reliability. However, this reliability was never challenged. Therefore, this Court is not in a position to address a new ground for suppression in the first instance. The District Judge correctly applied the inevitable discovery doctrine, and this argument fails.

### C. Merits of Defendant's 924(c) Claim

Defendant next claims that he was denied his procedural and/or substantive due process rights in violation of the Fifth and Fourteenth Amendments because his conviction on Count 1 of the indictment can no longer be defined as a "drug trafficking crime" for purposes of 18 U.S.C. § 924(c) in light of the FSA. D.E. 70 at 5. He argues that the FSA increased the drug quantity necessary to qualify as a drug trafficking crime, and that the increase renders his conviction on Count 1 to be merely simple possession instead of trafficking.

Defendant faces multiple procedural barriers to bringing this claim. Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *See Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000). As such, Defendant was required to bring this claim on direct appeal. For a federal prisoner to obtain review of a defaulted claim in a section 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700; *Phillip*, 229 F.3d at 552. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced by the alleged violation. *Bousley,* 523 U.S. at 623. Defendant argues that had it not been for counsel's error, the Sixth Circuit would have vacated his conviction under section

924(c). D.E. 70-1 at 19-20. But Defendant does not have the ability to bring this claim on a theory of ineffective assistance of counsel to excuse the default. Even if Defendant preserved this claim by raising it on direct appeal, he waived his right to collaterally attack the guilty plea, conviction, and sentence (D.E. 27 at ¶10), and does not challenge the validity of his guilty plea or waiver. The Sixth Circuit has routinely enforced a defendant's waiver of the right to collaterally attack his or her sentence, including the waiver of ineffectiveness claims. *See, e.g., Short v. United States*, 471 F.3d 686, 697-98 (6th Cir. 2006); *Davila v. United States*, 258 F.3d 448, 452 (6th Cir. 2001) ("When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."). Therefore, this claim must be dismissed.

Even if Defendant was not procedurally barred from bringing this claim, it fails because he is mistaken in his assertion that, under the FSA, the possession of 5.79 grams of crack-cocaine is not considered a drug trafficking crime under section 924(c). For purposes of section 924(c), "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 924(c)(2). Defendant was convicted of "Possession with Intent to Distribute Five Grams or More of Cocaine Base" in violation of 21 U.S.C. § 841(a)(1). D.E. 45 at 1. While the Order upon resentencing at Docket Entry 67 reduced Defendant's term of imprisonment, it did nothing to alter the offense of conviction on Count 1. The FSA did not alter or amend the definition of "drug trafficking crime" for purposes of section 924(c). Moreover, Defendant clearly pled guilty to possession with intent to distribute, which certainly is a "drug trafficking crime." During the colloquy, District Judge Hood asked Defendant, "[W]hat were you going to do with all that crack cocaine, sell it?" D.E. 60 at 18.

Defendant responded, "Most likely, yes, sir." *Id*. Judge Hood further clarified, "That's why it was in smaller bags?" *Id*. Defendant answered, "Yes, sir." *Id*. Even on the merits, this claim unequivocally fails because Defendant cannot retroactively revise the predicate offense of conviction.

### D. Ineffective Assistance of Appellate Counsel

Defendant's third claim, which necessarily incorporates his first claim, is that Mr. Schad provided ineffective assistance of counsel by not pursing an appeal of District Judge Hood's denial of Defendant's motion to suppress the evidence against him, resulting in prejudice in the form of deprivation of an independent review of the issue by the Court of Appeals. D.E. 70 at 7.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). Ineffective assistance of appellate counsel claims are governed by the same *Strickland* standards as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 This analysis often requires an assessment of success at trial in the absence of counsel's errors, such as whether an un-pursued affirmative defense would have been successful or whether uninvestigated evidence would have likely changed the outcome. *Id*. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Defendant's claim of ineffective assistance of counsel primarily fails because he cannot establish prejudice. In the appellate context, Defendant "must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In this case, an analysis of Defendant's claim under the prejudice prong implicates the unique interplay between the *Strickland* standard and the elements of a Fourth Amendment claim. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of

ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). As explained above, Defendant's Fourth Amendment claims are not meritorious and would not have resulted in suppression following an appeal. This means the required predicate under *Kimmelman* has not been established. In turn, Defendant cannot prove any likelihood, much less a reasonable probability, of a successful appeal had Mr. Schad filed a brief on the suppression issue. He therefore has not established prejudice as required by *Strickland, Kimmelman*, and *Robbins*.

Defendant also claims that resentencing him without an attorney deprived him of his preserved right to appeal the suppression issue. However, Defendant did not have a right to an attorney at resentencing. Where there is no constitutional right to counsel, a defendant cannot claim that he received ineffective assistance of counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). The Sixth Circuit granted a remand pursuant to 18 U.S.C. § 3582(c)(2) strictly for Defendant to be resentenced in light of *Dorsey v. United States,* 132 S. Ct. 2321 (2012). D.E. 66. In *Dorsey*, the Supreme Court held that "Congress intended the FSA's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date." *Dorsey*, 132 S. Ct. at 2331. Because Defendant would no longer be subject to a five-year statutory mandatory minimum after the FSA, he was resentenced pursuant to 18 U.S.C. § 3582(c)(2) which allows the court to reduce the term of imprisonment for a Defendant who has been sentenced based on a guidelines range that the Sentencing Commission subsequently lowers. Though the Sixth Circuit has yet to address the issue, seven circuits have held that there is no constitutional right to counsel in a 18 U.S.C. § 3582(c)(2) proceeding. *See White v. United*

*States*, 2013 WL 3154001, at *11 (W.D. Ky. May 14, 2013), *aff'd in relevant part by White v. United States*, 2013 WL 3153983, at *1 (W.D. Ky. June 19, 2013). Accordingly, Defendant did not have a right to counsel upon resentencing, so the absence of counsel does not entitle him to section 2255 relief.

Furthermore, Mr. Schad, who was not even admitted to practice before this Court, was no longer representing Defendant after the Sixth Circuit granted his remand. D.E. 102 at 62. Alternatively, even if Defendant was represented by Mr. Schad, without an instruction to file an appeal, Defendant cannot bring a claim of deficient performance. *See Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). In *Flores-Ortega*, the Supreme Court rejected a bright-line rule that an attorney must always consult with a client when there has been no express instruction to file an appeal, *Id*., further holding that "counsel [who] has consulted with the defendant . . . performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*.

On March 7, 2014, the Court held an evidentiary hearing to resolve a factual dispute between the parties as to whether Defendant instructed Mr. Schad to file an appeal of the suppression issue. D.E. 100. It is not disputed that Defendant and Mr. Schad frequently discussed Defendant's options on appeal. D.E. 109 at 9; 57-63. Throughout the hearing, Defendant maintained that he always intended to appeal the suppression issue, and instructed Mr. Schad to do so. Conversely, it is the government's position that Stewart affirmatively abandoned the suppression issue. A review of the letters exchanged between Defendant and Mr. Schad, and the testimony at the evidentiary hearing, establishes that Defendant did not instruct Mr. Schad to file an appeal following remand and resentencing.

On January 18, 2012, while Defendant's initial appeal was pending, Mr. Schad wrote Defendant a letter confirming that he had reviewed the suppression issue at the request of Defendant. D.E. 87-3 at 1. The letter states,

> My estimate is that it is not a very good issue for appeal; however, if you want to pursue it, I will motion to vacate the remand, and ask for a full briefing. We can still get the FSA if the Supreme Court rules in our favor; however, it may take longer (18-24 months) since we will not be doing a full appeal. Let me know.

*Id*.

On May 25, 2012, after receiving a letter from Defendant about pursuing the suppression issue, Mr. Schad wrote to Defendant informing him that, "[I] assume that you want to pursue the suppression issue. . . . Please confirm, and I will move forward with the appeal, challenging both the crack sentencing issue and the suppression issue." *Id*. at 2.

Subsequent to the remand and resentencing, on August 9, 2012, Mr. Schad sent Defendant a letter acknowledging that the two had recently discussed Defendant's options with regard to "either appealing, leaving the sentence as is, or attempting to re-open the sentencing proceedings." *Id*. at 3. Mr. Schad asked Defendant to notify him of his decision. *Id*.

After having spoken with Defendant via telephone, Mr. Schad sent a final letter to Defendant on August 10, 2012:

> We have now again discussed your case, and the various options available to you. You have indicated that you do not want a further appeal, you are happy with the newly imposed sentence, and have requested me to take no further steps. Accordingly, we will be closing your case. Thank you for allowing us to assist you.

*Id*. at 4.

At the evidentiary hearing, Defendant stated, "I always mentioned about appealing my suppression issue. . . . I never told him I didn't want to appeal my suppression issue. That was always the case with me; I always wanted to." D.E. 102 at 19. Defendant testified that he had

many conversations with Mr. Schad about appealing the suppression issue. *Id*. at 46. Defendant testified that as soon as he received his new judgment, he called Mr. Schad to direct him "[t]o appeal [his] suppression issue that [he] had pled guilty with the right to do. *Id*. at 11. Defendant stated that Mr. Schad discussed with him the option of appealing the new sentence received on remand, but instructed him that he could not appeal the suppression issue. *Id*. at 13. Defendant testified that he told Mr. Schad that he did not want to appeal the new sentence, but that he did want to appeal the suppression issue. *Id*. Defendant, in contrast to the testimony of Mr. Schad, testified that he was told that he could not appeal the suppression issue at that point and would have to seek relief through a section 2255 motion. *Id*.

The government argues, on the other hand, that Defendant made the decision to pursue a remand for resentencing rather than appeal the suppression issue, and abandoned the suppression issue. D.E. 106 at 2 (citing D.E. 101, Exhibits 1 and 4; D.E. 102 at 60). Mr. Schad testified that Defendant vacillated on the issue of whether to move forward with the remand or file a full appeal. D.E. 102 at 60. Further, Mr. Schad testified that, after the May 25, 2012 letter which asked Defendant to confirm that he wanted to pursue the suppression issue, Defendant never responded. *Id*. at 68-71. Finally, Mr. Schad testified that, during their last telephone conversation—which led to the writing of the August 10, 2012 letter—Defendant never mentioned a desire to appeal the suppression issue.

Up until the August 9, 2012 letter between Defendant and Mr. Schad, the evidence shows that Mr. Schad was dutifully following Defendant's instructions. The parties do not dispute that fact, but disagree as to whether Defendant expressed a desire to appeal the suppression issue after the remand. Given that Mr. Schad had followed Defendant's instructions throughout the attorney-client relationship, the evidence suggests that he would have continued to do so had

18

Defendant instructed him to file an appeal. Additionally, the August 10, 2012 letter memorializing Defendant's lack of intention to pursue any further appeal is the strongest piece of evidence of the discussions between the parties on the issue.[1] Had Defendant instructed Mr. Schad to pursue an appeal, given the diligence with which Mr. Schad was memorializing Defendant's instructions, additional correspondence would exist, but Defendant concedes it does not. *See* D.E. 102 at 40. Its absence strongly indicates that the August 10, 2012 letter accurately memorialized Defendant's instruction to Mr. Schad. Because Defendant did not instruct Mr. Schad to file an appeal, Defendant has not established deficient performance and his claim fails.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

---

[1] Contrary to Defendant's testimony that he was told by Mr. Schad that he was limited to section 2255 relief at that point, the letter contains no such advice.

19

The Court has considered the issuance of a Certificate of Appealability as to all claims presented by Defendant. However, no reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.

## V. RECOMMENDATION

For the reasons discussed above, the Court concludes that Defendant has failed to make the requisite showing that would entitle him to relief. Therefore, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion to vacate (D.E. 70). The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 5th day of June, 2014.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge