UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. |
| | ) | 5:10-cr-149-JMH-HAI |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 5:12-cv-7251-JMH-HAI |
| DANTE DEMETRIUS STEWART, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant-Petitioner. | ) | **AND ORDER** |

\*\*\*

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Hanly A. Ingram. [D.E. 107]. Petitioner filed a pro se Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255. [D.E. 70]. The matter was then referred to Magistrate Judge Ingram for a recommended disposition. The Magistrate Judge filed his Report and Recommendation on June 5, 2014, and Petitioner, after requesting an extension of time, [D.E. 109], timely filed his objections to the Report and Recommendation on July 9, 2014. [D.E. 112].[1] This matter is now ripe for the Court's consideration.

**I. Procedural History and Standard of Review**

Generally, "[a] judge of the court shall make a de novo determination of those portions of the report or specified

---
[1] Petitioner also filed a Motion to Expand the Record. [D.E. 111]. The Court having reviewed the Motion, and the United States having no objection to the Motion, [D.E. 113], Petitioner's Motion will be granted.

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After reviewing the Report and Recommendation in this case and reviewing the findings de novo, the Court adopts in part and rejects in part the Magistrate Judge's recommendation to deny Petitioner relief.

Officer Ricky Lynn was patrolling Greenwood Avenue in Lexington, Kentucky on April 28, 2010. Officer Lynn was the Neighborhood Resource Officer for the area encompassing Greenwood Avenue. [D.E. 58 at 5-6]. Officer Lynn testified that, as Neighborhood Resource Officer, he was in the area due to an increase in complaints of shots being fired in the area and complaints of narcotic sales. [D.E. 58 at 8-9]. According to Officer Lynn, these complaints had been daily in the time leading up to his encounter with Petitioner. [D.E. 58 at 9].

Officer Lynn testified that, while parked observing Greenwood Avenue, a vehicle, containing Petitioner and two others, passed him, with none of the passengers wearing a seat belt. [D.E. 58 at 11]. Officer Lynn then got in position to follow the car and observed the car make a left hand turn without signaling. [D.E. 58 at 11-12]. At that point, Officer Lynn activated his emergency lights and stopped the vehicle. [D.E. 58 at 11-12]. Upon approaching the vehicle, Officer Lynn noticed an open liquor bottle in the floor board of the back seat. [D.E. 58 at 13]. When arriving at the front of the car,

Officer Lynn noticed that there was a crack in the windshield obstructing the driver's view. [D.E. 58 at 14]. Officer Lynn asked for identification and the driver and front seat passenger complied, but the passenger in the back seat stated he had no identification. [D.E. 58 at 13]. However, the passenger in the back seat provided his social security number. [D.E. 58 at 14]. Officer Lynn then used this information to run a check on all of the occupants of the vehicle. [D.E. 58 at 15-16]. The occupants of the vehicle were Darryl Stewart, William Higgins, and Petitioner, Dante Stewart. [D.E. 58 at 14].

The records check of Darryl Stewart revealed that he had six prior offenses for carrying a concealed deadly weapon, a charge for minor in possession of a handgun, and a charge for violation of a protective order. [D.E. 58 at 18-19]. Additionally, Darryl Stewart had a probation violation, [D.E. 58 at 19], and had been booked for a charge of assault in the fourth degree. [D.E. 58 at 20]. When Officer Lynn entered Higgins' social security number it revealed that he had a prior drug trafficking offense and a parole violation. [D.E. 58 at 23-24].

When reviewing the criminal history of Petitioner, Officer Lynn noted that Petitioner had four wanton endangerment charges, all on the same day. [D.E. 58 at 21]. Officer Lynn testified that part of his job with the Lexington Police Department was

instructing officers on how to write mobile reports through computers in their cars. [D.E. 58 at 17]. Based upon the way Officer Lynn teaches officers to write up reports, [D.E. 58 at 59], and all of his training and experience, Officer Lynn believed the wanton endangerment charges involved a firearm. [D.E. 58 at 22]. Additionally, Petitioner had a previous charge for possession of marijuana. [D.E. 58 at 21].

Officer Lynn testified that he called in the stop at 10:34 a.m., another officer joined the stop at 10:35 a.m., and Officer Lynn requested a canine unit and a back-up unit at 10:43 a.m. [D.E. 58 at 25]. The canine unit arrived at 10:49 a.m. [D.E. 58 at 27]. Officer Lynn testified that in the time between calling for the canine unit and its arrival, he began writing a citation for failing to signal, failing to wear seatbelts, for the open liquor bottle, and for the broken windshield, [D.E. 58 at 27], but was unable to complete the citation before the canine unit arrived.

Upon the canine officer arriving, the occupants were asked to get out of the car. [D.E. 58 at 29]. Based upon all of the information available to Officer Lynn, he decided to conduct a frisk of all the passengers. Officer Lynn first conducted a pat-down frisk of Petitioner and found a .25 caliber semiautomatic handgun with a round in the chamber in the back pocket of Petitioner's pants. [D.E. 58 at 29-31]. Officer Lynn's record

check had revealed that none of the occupants had a concealed carry permit. [D.E. 58 at 15]. Officer Lynn placed Petitioner under arrest and gave him the Miranda warning. [D.E. 58 at 32].

Around the same time Officer Lynn found the handgun in Petitioner's pants, the dog alerted on the car. [D.E. 58 at 32]. After the dog alerted, the officers began searching the car and found a loaded handgun in the floorboard under the driver's seat. [D.E. 58 at 34]. Darryl Stewart immediately claimed ownership of this gun. [D.E. 58 at 35].

Once in the booking area of the police department, and while Officer Lynn was not looking, a bag of crack cocaine appeared on the floor between Petitioner, Darryl Stewart, and William Higgins. [D.E. 58 at 38-39]. Officer Lynn noticed that Petitioner's pants were unzipped. [D.E. 58 at 39]. Officer Lynn asked another officer to pull the video of the area and Petitioner then admitted the drugs were his. [D.E. 58 at 39]. Petitioner eventually admitted that he had another bag of crack cocaine on his person. [D.E. 58 at 39-41].

Based upon this conduct, Petitioner was charged with possession with intent to distribute crack cocaine, a violation of 21 U.S.C. § 841(a)(1), and carrying a firearm in furtherance of drug trafficking, a violation of 18 U.S.C. § 924(c)(1). [D.E. 1]. Petitioner filed a motion to suppress arguing that Officer Lynn did not have reasonable suspicion to conduct the pat-down

search that led to discovery of the handgun. [D.E. 17]. After an evidentiary hearing, the motion to suppress was denied. [D.E. 26]. Petitioner then entered a conditional plea of guilty to all charges, expressly reserving the right to appeal the Court's denial of his motion to suppress. [D.E. 60].

Petitioner was sentenced and filed a notice of appeal. [D.E. 45, 48]. Petitioner's appeal was held in abeyance pending the Supreme Court's decision in *Dorsey v. United States* and *Hill v. United States*, [D.E. 63], and remanded to the Court upon Petitioner's motion for remand for resentencing after the disposition of *Dorsey* and *Hill*. [D.E. 66]. Upon the Court's own motion pursuant to 28 U.S.C. § 3582(c)(2), Petitioner's sentence on Count 1, possession with intent to distribute crack cocaine, was reduced from 60 months to 24 months. [D.E. 68]. Petitioner filed no further appeal, including an appeal of the Court's decision to deny Petitioner's motion to suppress.

On December 18, 2012, Petitioner filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging that reasonable suspicion did not exist to conduct a pat-down, that his conviction is no longer a drug trafficking crime, and that appellate counsel provided ineffective assistance. [D.E. 70]. Petitioner's request for a writ of habeas corpus was referred to Magistrate Judge Hanly A. Ingram. Magistrate Judge Ingram issued a report and recommendation

recommending that the Court deny Petitioner's motion to vacate and not issue a certificate of appealability. [D.E. 107].

Petitioner raises five objections to the report and recommendation issued by the Magistrate Judge. First, Petitioner objects to the Magistrate Judge's finding that Officer Lynn's pat-down of Petitioner was supported by reasonable suspicion. [D.E. 112 at 2]. Second, Petitioner argues that the inevitable discovery doctrine cannot apply based upon the later positive indication by a drug dog because the United States did not prove the reliability of the drug dog. [D.E. 112 at 6]. Then, Petitioner argues that the Magistrate erred by not finding that he was entitled to counsel at resentencing. [D.E. 112 at 8]. Next, Petitioner argues that the Magistrate Judge erred by finding that the evidence did not show that Petitioner instructed counsel to file an appeal. [D.E. 112 at 11]. Finally, Petitioner argues that the Magistrate Judge applied an incorrect standard when determining that Petitioner did not set forth a meritorious ineffective assistance of counsel claim. [D.E. 112 at 14].

## III. Analysis

Upon de novo review, the Court adopts in part and rejects in part the Magistrate Judge's findings and will deny in part and grant in part Petitioner's petition.

**1. Officer Lynn's pat-down was supported by reasonable suspicion.**

Officer Lynn's pat-down search of Petitioner was supported by reasonable suspicion. "A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop and conducting pat-down searches upon reasonable suspicion that they may be *armed* and *dangerous*." *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005) (citations omitted) (internal quotation marks omitted). "To justify a pat-down search, the officers must articulate specific facts that would warrant 'a reasonably prudent man in the circumstances . . . in the belief that his safety or that of others was in danger.'" *Id*. at 822 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

"Reasonable suspicion is based on the totality of the circumstances and must require 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

> This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Pertinent circumstances include the officer's own direct observations, dispatch information,

> directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred. While an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime, police officers are not required to ignore the relevant circumstances of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.

*United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) (citations omitted) (internal quotation marks omitted). "This means that [the Court] must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *United States v. Sokolow*, 490 U.S. 1, 9 (1989)).

The totality of circumstances that existed at the time Officer Lynn conducted a frisk of Petitioner support a finding that Officer Lynn had reasonable suspicion to conduct the search. Officer Lynn was aware Petitioner was in a high crime area and Officer Lynn was aware of frequent reports of drug trafficking and firearms in the area. [D.E. 58 at 9, 42-43]. In fact, Officer Lynn testified that the reason he was on Greenwood Avenue was because of the recent increase in calls about firearms and narcotic sales in the area. [D.E. 58 at 71].

When conducting the traffic stop, pursuant to normal procedure, Officer Lynn ran a records check of all the occupants. This revealed that Darryl Stewart had multiple gun charges, William Higgins had a drug trafficking offense, and Petitioner had wanton endangerment charges and a charge for possession of a controlled substance. Officer Lynn believed, based upon his training and experience, that the wanton endangerment charges involved a firearm. [D.E. 58 at 22]. Officer Lynn explained that, if the report had been written up as he teaches officers to do, the wanton endangerment charges would involve a firearm. [D.E. 58 at 59].

Furthermore, when Petitioner was removed from the vehicle, he was asked if he had any weapons and paused before answering. [D.E. 58 at 68]. This spiked Officer Lynn's fears. [D.E. 58 at 68]. Additionally, Officer Lynn testified that his multiple layers of clothes were baggy and Officer Lynn was worried that this would allow Petitioner to conceal a weapon. [D.E. 58 at 63].

Based upon the area the car was stopped and the criminal histories of the occupants of the vehicles, Officer Lynn had a suspicion narcotics could be involved. [D.E. 58 at 26]. Based on his training and experience, Officer Lynn testified that he was aware a lot of individuals involved in drug trafficking carry firearms. [D.E. 58 at 26]. The Sixth Circuit "has held that,

where an officer suspects drug activity, he can reasonably infer that the suspect is armed and dangerous." *United States v. Akinyemi*, 101 F.App'x 109, 111 (6th Cir. 2004) (citing *United States v. Vite-Espinoza,* 342 F.3d 462, 467 (6th Cir. 2003)); *see also United States v. Ross*, 92 F.App'x 482, 484 (6th Cir. 2004) (citations omitted) ("Because Officer Vallee suspected drug activity, he could reasonably infer that Ross was armed and dangerous, as drug-traffickers tend to be. Thus, the pat-down was permissible.").

These circumstances would cause a reasonably prudent person to fear for his safety. The car was stopped in a high crime area with a recent spike in firearm and drug related offenses. At the time the pat-down occurred, Officer Lynn was aware the occupants of the car had criminal histories involving drugs and firearms. Accordingly, the Court agrees with the Magistrate Judge that the pat-down search was supported by reasonable suspicion.

**2. The United States was not required to present evidence of the reliability of the drug dog because the reliability of the drug dog was never challenged.**

Petitioner objects to the Magistrate Judge's report and recommendation arguing that the Magistrate Judge incorrectly found that the district court correctly applied the inevitable discovery rule. Petitioner's objection is essentially that the application of the inevitable discovery doctrine cannot be based upon the positive alert of the drug dog because the United

States did not present evidence of the reliability of the drug dog.

First, the Court notes that this was merely an alternative argument for denying Petitioner's motion to suppress. The inevitable discovery doctrine is not necessary to resolve this case because the frisk of Petitioner was supported by reasonable suspicion. Second, the Court agrees with the Magistrate Judge that the reliability of the drug dog did not need to be established because the existence of probable cause for the warrantless search of the automobile was never challenged. Petitioner has cited no case law that requires the United States to automatically produce dog certification records anytime a drug dog is involved in a search and the Court has found none.

The Court notes that a previous case from this Court would seem to be at odds with the decision reached today. However, an analysis of the procedural posture of each of the cases shows that they are distinguishable.

> The United States has failed to establish the qualifications of the drug dog. Consequently, the dog's alert on the car cannot be the basis of probable cause to search the car. The United States argues that the defendants waived this argument because neither defendant questioned the canine's reliability in their motion to suppress. The United States' contention fails because it bears the burden of proof on this issue. It is not the duty of the defendants to challenge the canine's reliability; rather, it is the duty of the United States to prove the canine's qualifications, reliability, and certification.

*United States v. Swanger*, No. 05-cr-53-JBC, 2005 WL 2002441, at *6 (E.D. Ky. Aug. 18, 2005) (citations omitted). In *Swanger*, the defendants had explicitly challenged whether probable cause existed to search the vehicle. *See id.* at *5-6. The United States claimed there was probable cause based upon the positive alert of a drug dog, but failed to present evidence on the reliability of the dog. *Id.* at *6. When faced with Sixth Circuit precedent that "the training and reliability of the dog must be established [for a positive dog reaction to support a determination of probable cause]," *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994), the logical conclusion is that, when probable cause is challenged and the United States attempts to use a drug dog to establish probable cause, some evidence of the dog's reliability must be presented. Without any evidence of the drug dog's reliability, it would be impossible for a reviewing court to determine whether the positive reaction from the drug dog amounted to probable cause. Thus, *Swanger* establishes that when the drug dog is put into issue, it is the United States' burden to prove the dog's reliability.

This conclusion is supported by the framework envisioned by the Supreme Court in *Florida v. Harris*.

> [A] probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to

> decide what all the circumstances demonstrate. If the
> State has produced proof from controlled settings that
> a dog performs reliably in detecting drugs, and the
> defendant has not contested that showing, then the
> court should find probable cause. If, in contrast, the
> defendant has challenged the State's case . . ., then
> the court should weigh the competing evidence.

*Florida v. Harris*, 133 S.Ct. 1050, 1058 (2013). Like any other evidentiary issue, before an evidentiary hearing of this type can be held, the reliability of the dog must first be put in issue, either by specifically challenging the reliability of the dog or challenging the existence of probable cause for a search that involved a positive reaction by a drug dog. Once the drug dog is put into issue, the government must present evidence of the dog's reliability and the defendant has an opportunity to present evidence that the dog is not reliable. Therefore, in *Swanger*, because the warrantless search undertaken after a positive reaction from a drug dog had been challenged, the United States had the burden to produce some evidence of reliability to establish probable cause. *See Swanger*, 2005 WL 2002441, at *6 n.7 ("[I]t is the government's burden to prove that the warrantless search was justified. Proving the qualifications of the canine is part of meeting that burden."). Without this evidence, there was no basis for the Court to find probable cause.

Here, the motion to suppress only argued that waiting on the canine unit to arrive impermissibly lengthened the stop

beyond what was required to complete the purpose of the original stop. [D.E. 17 at 6-9]. However, it was never argued that the police did not have probable cause to search the car once the drug dog alerted to the vehicle. Thus, the United States was not required to produce records of the drug dog's certification and reliability because it was never put into issue. Much like in *Harris*, Petitioner cannot challenge the dog's reliability for the first time here. *Harris*, 133 S.Ct. at 1058 ("But Harris never voiced these doubts in the trial court, and cannot do so for the first time here." (citations omitted)). Accordingly, the inevitable discovery doctrine serves as another basis for allowing the discovery of a firearm into evidence.

**3. Petitioner was not eligible for a modification of sentence pursuant to 18 U.S.C. § 3582(c)(2). Thus, the Court will resentence Petitioner within the bounds of the Sixth Circuit's limited remand order.**

The Court disagrees with the Magistrate Judge and finds that the Court erred by modifying the Petitioner's sentence under § 3582 (c). The Magistrate Judge is correct that multiple courts have found that there is no constitutional right to an attorney in a § 3582(c)(2) proceeding. *E.g.*, *United States v. Carrillo*, 389 F.App'x 861, 863 (10th Cir. 2010) ("[H]e was not entitled to counsel during the § 3582(c)(2) proceeding." (citations omitted)); *see also Dillon v. United States*, 560 U.S. 817, 828 (2010) ("Viewed that way, proceedings under §

3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt."). However, the Court must first answer whether it was possible for Petitioner's sentence to be modified pursuant to a motion made under § 3582(c)(2).

"[Section] 3582(c)(2) does not authorize resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission." *Dillon*, 560 U.S. at 831. "A sentence reduction pursuant to section 3582(c)(2) can only be made on the basis of amendments to the sentencing guidelines." *United States v. Downs*, 487 F.App'x 286, 287 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 1513 (2013); *see also* 18 U.S.C. § 3582(c)(2). The Sixth Circuit has held that the changes to the statutory mandatory made by the Fair Sentencing Act were based on statutory changes, not amendments to the Guidelines.

> Enacted as part of the Sentencing Reform Act of 1984, § 3582(c)(2) permits inmates to seek a sentence reduction in a specific setting: in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o). . . . In the Fair Sentencing Act, Congress, not the Sentencing Commission, lowered those mandatory minimum criminal penalties. Congress is not the Sentencing Commission. When Congress lowers a penalty, it acts under Article I of the Constitution, not 28 U.S.C. § 994(o). It follows that a mandatory minimum subsequently lowered by Congress is not, as § 3582(c)(2) requires, a sentencing range . . . subsequently . . . lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o).

*United States v. Blewett*, 746 F.3d 647, 656 (6th Cir. 2013) (en banc) (citations omitted) (internal quotation marks omitted), *cert. denied*, 134 S.Ct. 1779 (2014). Accordingly, if Petitioner's sentence was imposed pursuant to the statutory mandatory minimum, Petitioner's sentence could not have been modified pursuant to § 3582(c)(2).

It is clear from the transcript of the sentencing proceedings that Petitioner's sentence was imposed based upon the statutory mandatory minimum. "To determine whether a sentence is based on a Guidelines range promulgated by the Sentencing Commission or a different sentencing scheme, we engage in a 'fact-driven, commonsense inquiry about whether a sentence is derived exclusively from a particular sentencing scheme.'" *United States v. Stanley*, 500 F.App'x 407, 410 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 1302 (2013) (quoting *United States v. McClain*, 691 F.3d 774, 778 (6th Cir. 2012)). In *Stanley*, the Court reviewed the transcript of the sentencing proceedings to determine the driving force behind the defendant's sentence. *Id.* ("The district court informed Stanley that 240 months was the minimum under the law, and Stanley acknowledges that the amount of crack cocaine he possessed triggered a mandatory sentence." (citations omitted) (internal quotation marks omitted)).

A review of Petitioner's sentencing proceeding leaves no doubt that Petitioner's sentence was based upon the statutory mandatory minimum.

> Mr. Wright: Because at the time there was some thought that he might fall within the statutory guideline provisions where on the presentence investigative report it's been determined that that is not accurate.
> The Court: Okay.
> Mr. Wright: That he falls in the statutory mandatory minimums.
> . . .
> The Court: The combination of the offense level 15, criminal history category 2 doesn't really impact us in this matter because there is a mandatory minimum on count one of sixty months, which is greater than the criminal history – the guideline range, so that is what I have to apply.
> . . .
> The sentence I impose I can't do much about, Mr. Wright is exactly correct. Congress has said these are mandatory minimums. I can't do anything about it. So I will not, though, go above mandatory minimums.

[D.E. 62 at 3-5, 9]. "Therefore, [Petitioner's] sentence could not have been based on a sentencing range that the Sentencing Commission subsequently lowered because his sentence was based on a statutory mandatory minimum." *Stanley*, 500 F.App'x at 410. Accordingly, Petitioner's sentence did not fit within the narrow bounds of § 3582(c)(2), and it was error for the Court to modify Petitioner's sentence pursuant to § 3582(c)(2).

Despite the Court's error in modifying Petitioner's sentence and despite the fact that Petitioner must be resentenced in accordance with the Sixth Circuit's order, Petitioner is not entitled to a full resentencing hearing

because the Sixth Circuit entered a limited remand order. "A general remand allows the district court to resentence the defendant de novo, which means that the district court may redo the entire resentencing process, including considering new evidence and issues. Conversely, a limited remand constrains the district court's resentencing authority to the issue or issues remanded." *United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011). "When a court simply vacates a sentence and remands for 'resentencing,' or 'resentencing consistent with this opinion,' that will typically be a general remand." *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011). However, "the trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citations omitted) (internal quotation marks omitted). Taking into account the appellate court's order and the circumstances surrounding the remand, the Court finds that the order remanding for resentencing was limited.

In light of the Supreme Court's decision in *Dorsey v. United States*, the Sixth Circuit remanded for resentencing for the application of "the Fair Sentencing Act of 2010 in calculating [Petitioner's] sentence." [D.E. 66]. The Fair Sentencing Act simply increased the required amount of crack

cocaine to qualify a defendant for the statutory mandatory minimum and instructed the Sentencing Commission to amend the Guidelines to conform with the new law. *See Dorsey v. United States*, 132 S.Ct. 2321, 2329 (2012). Thus, the remand was limited to resentencing based upon a calculation of Petitioner's Guideline range using the changes implemented by the Fair Sentencing Act. Petitioner's plea agreement, statements at the rearraignment hearing, and presentence report established the necessary facts for the Court to properly apply the correct Guideline range to Petitioner's conduct. Nothing in the Sixth Circuit's remand order suggests that it is necessary for the Court to take new evidence or reconsider any other issues.

Because the Sixth Circuit entered a limited remand order, the Court "[relies] upon the procedural rights provided to [Petitioner] prior to remand," *Garcia-Robles*, 640 F.3d at 166, and Petitioner is not required to have counsel prior to the Court imposing a new sentence. Petitioner was provided his full panoply of rights at the original sentencing hearing. *See* [D.E. 62]. Petitioner was afforded counsel, was present at the hearing, and was given the opportunity to allocute. [D.E. 62; *see also United States v. Jeross*, 521 F.3d 562, 585-86 (6th Cir. 2008) (holding that it was not reversible error to deny defendants the right to allocute at resentencing after limited remand). The Court relies upon these safeguards previously

20

provided to Petitioner, and will review the transcript of those proceedings, [D.E. 62], prior to imposing Petitioner's new sentence.

As it was error for the Court to modify Petitioner's sentence pursuant to § 3582(c)(2), the Court will enter a separate order striking the order modifying Petitioner's sentence, [D.E. 67], and the modified judgment, [D.E. 68], and enter a new order resentencing Petitioner based upon the Fair Sentencing Act of 2010.

**4. The Magistrate Judge did not err in finding that the evidence did not support a finding that Petitioner instructed counsel to file an appeal.**

The Magistrate Judge did not err in finding that Petitioner failed to meet his burden of showing that he instructed counsel to file an appeal. "Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." *McQueen v. United States*, 58 F.App'x 73, 76 (6th Cir. 2003) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). The Magistrate Judge held an evidentiary hearing on this limited issue. [D.E. 102]. A review of the transcript of the evidentiary hearing and correspondence between counsel and Petitioner shows that Petitioner failed to meet his burden.

Petitioner testified at the evidentiary hearing. Petitioner claims that Kevin Schad was appointed to represent him on appeal

on August 10, 2011. [D.E. 102 at 9]. After the appeal had been filed, Schad informed Petitioner that he was entitled to be resentenced pursuant to the Fair Sentencing Act of 2010 and asked Petitioner if he would like to remand his appeal for resentencing. [D.E. 102 at 10]. The appeal was remanded for resentencing, but Petitioner maintains that at all times he believed his appeal of the suppression issue would still go forward. [D.E. 102 at 10]. Once remanded, the Court entered a new judgment reducing Petitioner's sentence on Count 1. Petitioner testified that upon receiving a copy of the new judgment he called Schad. [D.E. 102 at 11]. According to Petitioner, the purpose of this call was to have Schad go forward with an appeal of the suppression issue. [D.E. 102 at 11]. Petitioner testified that, during the phone call, Schad advised him he could not appeal the suppression issue and would have to file a § 2255 petition. [D.E. 102 at 13-14]. Petitioner maintains that he "always wanted to pursue [his] suppression issue." [D.E. 102 at 16].

Schad also testified at the evidentiary hearing. Schad testified that, on August 9, 2012, he told Petitioner he could appeal both the new sentence and the suppression issue. [D.E. 102 at 74]. According to Schad, Petitioner requested time to determine whether he wanted to file a notice of appeal, either on the resentencing or the suppression issue. [D.E. 102 at 75].

22

On August 10, Petitioner contacted Schad and informed him that he did not want to appeal further. [D.E. 102 at 76]. Schad testified that at no point did he discuss a § 2255 petition with Petitioner. [D.E. 102 at 77]. According to Schad, if Petitioner had instructed Schad to file a new appeal, he would have filed the appeal. [D.E. 102 at 89-90, 94]. In addition to testifying at the evidentiary hearing, Schad submitted an affidavit in this matter. [D.E. 78-1]. In the affidavit Schad also swears that, on August 10, 2012, Petitioner indicated he did not want to appeal any of the potential issues and that Schad should take no further steps. [D.E. 78-1 at 1].

Additionally, there is an August 9, 2012 letter from Schad to Petitioner. In part, the letter stated, "We outlined your possible options for either appealing, leaving the sentence as is, or attempting to re-open the sentencing proceedings. I am waiting to hear back from you as to your decision." [D.E. 87-3 at 3]. Another letter, dated August 10, 2012, from Schad to Petitioner states, "We have now again discussed your case, and the various options available to you. You have indicated that you do not want a further appeal, you are happy with the newly imposed sentence, and have requested me to take no further steps." [D.E. 87-3 at 4]. Notably absent from these letters is any indication that Schad discussed § 2255. Further, the final

letter explicitly states that Petitioner indicated he did not want to file an appeal.

Petitioner filed a Motion to Expand the Record asking the Court to consider the letter he sent to the Sixth Circuit Court of Appeals on January 26, 2012. [D.E. 111]. The Court has considered the letter and finds that it does not help the Court determine if Petitioner instructed Schad to file an appeal following modification of his sentence. This letter was sent prior to the remand and while Petitioner's full appeal, including the suppression issue, was ongoing. Thus, the letter offers no help in determining whether Petitioner instructed Schad to file an appeal in August, after remand and modification of Petitioner's sentence.

Thus, the Court finds that Petitioner has failed to show by a preponderance of the evidence that he instructed Schad to file an appeal. The Court agrees with the Magistrate Judge's analysis. Schad had dutifully followed all of Petitioner's instructions during representation and Petitioner had been in frequent contact with Schad. Schad's letter dated August 10, 2012 memorializing Schad's perceived instruction not to file a further appeal and Petitioner's lack of objection to this course of action does not allow the Court to find that Petitioner instructed Schad to file an appeal. Accordingly, Petitioner has

failed to show that Schad provided deficient performance, and his ineffective assistance of counsel claim must fail.

**5. The Magistrate Judge erred by analyzing Petitioner's chances of success on appeal; however, Petitioner's ineffective assistance of counsel claim must fail because Petitioner has failed to show that Mr. Schad's performance was deficient.**

The Magistrate Judge applied the *Strickland* standard in assessing Petitioner's ineffective assistance of counsel claim. Under *Strickland v. Washington*, a defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court agrees with Petitioner that the Magistrate Judge erred by assessing the prejudice prong of the *Strickland* test.

Petitioner alleges that appellate counsel was ineffective because he failed to follow Petitioner's explicit instructions to file an appeal. The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. at 478.

If Petitioner could show he asked counsel to file an appeal and that counsel failed to do so, he would satisfy the prejudice requirement. *See Flores-Ortega*, 528 U.S. at 484 ("[W]e hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."); *see also id.* at 485 ("[In *Rodriguez v. United States*], [w]e held that the defendant, by instructing counsel to perfect an appeal, objectively indicated his intent to appeal and was entitled to a new appeal without any further showing." (citing *Rodriguez v. United States*, 395 U.S. 327, 330 (1969))); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("We . . . hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). If Schad had failed to follow Petitioner's express instructions, as Petitioner alleges, Petitioner would have had a meritorious ineffective assistance of counsel claim, regardless of his chances of success on appeal. Therefore, the Magistrate Judge erred by analyzing the prejudice prong based upon the merits of Plaintiff's suppression issue.

Although the Court disagrees with the Magistrate Judge's analysis, the ultimate conclusion is the same. As has been previously discussed, the Court does not find that Schad failed

to follow Petitioner's express instructions to file an appeal. In fact, the last piece of evidence presented suggests that Petitioner instructed defense counsel not to file an appeal. *See* [D.E. 87-3 at 4]. Therefore, Petitioner cannot show, by a preponderance of the evidence, that defense counsel's performance was deficient. Accordingly, Plaintiff's ineffective assistance of counsel claim is without merit.

## 6. No Certificate of Appealability Shall Issue

No certificate of appealability shall issue in this matter. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate to issue, Petitioner must be able to show that reasonable jurists could find in his favor, and the "question is the debatability of the underlying federal constitutional claim, not the resolution of that debate." *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003). In this case, reasonable jurists would not debate the denial of Petitioner's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See id.*

## IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Petitioner's Motion to Expand the Record [D.E. 111] be, and the same hereby is, **GRANTED**;

(2) that the Magistrate Judge's Report and Recommendation [D.E. 107] be, and the same hereby is, **ACCEPTED AND ADOPTED IN PART** and **REJECTED IN PART** as set forth above;

(3) that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [D.E. 70] be, and the same hereby is, **GRANTED IN PART** and **DENIED IN PART**. The Court will enter a separate order resentencing Petitioner in accordance with the Fair Sentencing Act of 2010. All other grounds for relief requested are **DENIED**.

This the 4th day of August, 2014.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge